THOMAS A. REMINGTON *vs.* DEXTER B. PATTISON.

Suffolk. March 14, 1928.— June 29, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Broker*, Commission. *Contract*, Construction. *Evidence*, Competency, Of custom. *Custom.*

At the trial of an action of contract by a real estate broker against an owner of land to recover a commission, it appeared that the defendant orally hired the plaintiff to find a purchaser for his land and agreed to pay him a certain commission; that the plaintiff procured a customer with whom the defendant signed a contract for the sale of the land and from whom he accepted an initial payment; and that subsequently the defendant and the customer failed to complete the sale, there being evidence for the plaintiff that this was due to the defendant's failure to clear the title of certain alleged defects, and evidence for the defendant that the title was free of defects but that the customer refused to buy as agreed upon. The defendant alleged and testified that it was part of his agreement with the plaintiff that the plaintiff should be entitled to a commission only if and when the customer took title, and that if the sale was not completed the plaintiff would not be entitled to a commission. *Held,* that

(1) Evidence properly was admitted to show that there was a boom in real estate in the locality where the land was at the time of the transactions concerned; such evidence was competent on the issue whether the failure to complete the sale was due to the state of the title to the defendant's land or to other considerations;

(2) Evidence properly was admitted to show that there was a custom

in that locality that brokers' commissions were to be paid only when title passed, in the absence of a special agreement to the contrary; the agreement between the plaintiff and defendant being oral and uncertain, such evidence was competent to show its terms.

CONTRACT. Writ dated July 12, 1926.

In the Superior Court, the action was tried before *Greenhalge*, J. Material evidence is described in the opinion. The contract between the defendant and Weisberg mentioned in the opinion was entered into March 6, 1926. The jury found for the defendant, and the plaintiff alleged exceptions.

The case was submitted on briefs.

*W. A. Murray*, for the plaintiff.

*A. Van A. Thomason*, for the defendant.

WAIT, J. The declaration alleges that the plaintiff is a real estate broker with whom the defendant listed premises in Falmouth under an agreement that if the broker should procure a person ready, willing and able to buy the premises on terms satisfactory to the defendant, the latter would pay a broker's commission of five per cent of the purchase price; that he did procure such a person, and that the defendant, by reason thereof, owes him $675. A count upon an account annexed was also set out. The defendant made a general denial, and answered further that "there was a special agreement that commission was to be paid to said plaintiff only at and upon the time of the completed sale going through, and that said sale has not gone through" so that the defendant owes nothing.

At the trial to a jury there was testimony that the "defendant engaged [the plaintiff] as a broker to find a purchaser for" the land in question; that in listing the property he had written: "The following properties are offered for sale subject to prior sale or withdrawal without notice. In case sales are made by brokers, however, they will be fully protected by me"; that the plaintiff interested one Weisberg in the property who finally agreed with the defendant on a price of $13,500, paid $1,000 down on signing an agreement for purchase and sale, and was ready, willing and able to perform the conditions of the agreement provided the defendant

cleared up certain alleged defects in the title; that the defendant retained the $1,000, but neglected to clear the title; that the agreement signed by buyer and seller contained the statement: "It is understood that a broker's commission of five per cent on the said sale is to be paid to Remington & Reid [the plaintiff] by the said party of the first part" (the defendant); that the defendant was in the brokerage business on Cape Cod and made a special oral agreement with the plaintiff on the Weisberg contract that he would pay the commission if, as and when papers were passed and Weisberg took title, and if for any reason the deal did not go through the plaintiff would not be entitled to any commission; that plaintiff assented and defendant said: "If I were dealing with a stranger, I would have this in writing, but considering that you and I have discussed the difficulty with the titles and both know the custom that no commission is paid until the sale actually goes through, I do not think we need a writing"; that there was no legal imperfection in the title and the defendant was willing to go through with the agreement, but Weisberg refused to buy as agreed and papers had never passed; that there had been no talk between plaintiff and defendant relative to the payment of the commission except that when the agreement was signed the defendant said: "The commission will be five per cent," and the plaintiff said: "That is as the agreement was."

Against the plaintiff's exception, evidence was admitted that a boom in real estate on Cape Cod began in January, 1926, and lasted until April following; that there was a universal local custom on Cape Cod in regard to real estate brokerage commissions and that it was customary when an owner listed property with a broker in the absence of special agreement that the commission was to be paid only upon delivery of the deed: "When nothing is said about the commission the custom is, 'no sale, no commission.'"

In this there was no error. In the state of the evidence, as recited, testimony was admissible to enable the jury to decide whether the failure to complete the transaction was due to the state of the title or to other considerations. Different rules of law would apply, if the purchaser was in fault, from

those applicable if the fault lay with the seller. The state of the market around the time of performance well might be significant. So in deciding what the offer to the plaintiff conveyed and was intended to convey to his mind and thus in deciding whether any and what contract was made, the custom was of importance. If all brokers, dealing in land situated as this was on Cape Cod, understood that unless a special agreement was made the rule was "no sale, no commission," then the contract entered upon between them would differ in legal essentials from one made in the absence of such a usage. There was here no agreement in writing between the plaintiff and defendant. There was dispute whether a special agreement had been made. The terms of contract were to be decided as matter of fact; and evidence of a custom of the locality affecting the minds of all contracting parties was manifestly material and competent to assist in reaching a just decision. *A. J. Tower Co.* v. *Southern Pacific Co.* 184 Mass. 472.

No exception was claimed to the charge, and we must assume that it stated fully the rules of law in regard to custom and usage as affecting contractual relations which are laid down with ample illustration in *Conahan* v. *Fisher*, 233 Mass. 234, 238, *et seq.* The rule that usage is not admissible to contradict the unambiguous language of an express contract, *Spevack* v. *Budish*, 238 Mass. 215, *Cesana* v. *Johnson*, 232 Mass. 444, *Guild* v. *Sampson*, 232 Mass. 509, is not applicable here; for the testimony left the contract uncertain. See *Edward T. Harrington Co.* v. *Waban Rose Conservatories*, 222 Mass. 372. *Menage* v. *Rosenthal*, 175 Mass. 358.

The rulings were correct.

*Exceptions overruled.*