TRISTRAM'S LANDING, INC. & another [1] *vs.*
LINDA LORING WAIT.

Nantucket. February 5, 1975. — May 2, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Broker,* Commission. *Contract,* With broker.

Where a real estate broker solicited a nonexclusive listing of real estate but no mention was made of a commission until the owner signed a purchase and sale agreement with a purchaser produced by the broker, providing that "a broker's commission of five (5) percent on the said sale . . . [was] to be paid to . . . [the broker] by the said seller," and the purchaser defaulted on the contract, the broker was not entitled to the five per cent commission under the contract since consummation of the sale was a condition precedent to the broker's becoming entitled thereto. [625-627]

----

[1] D. P. Van der Wolk.

Absent a valid contract to the contrary, a real estate broker, under a
brokerage contract hereafter made, will be entitled to a commis-
sion from the seller only if (a) he produces a purchaser ready,
willing and able to buy on the terms fixed by the owner, (b) the
purchaser enters into a binding contract with the owner to do so,
and (c) the sale is consummated in accordance with the contract
or, if it is not consummated, the failure of consummation is due to
wrongful act or interference by the seller and not to any default of
the purchaser [628-630]; and contracts requiring the seller to pay
a commission even though the purchaser defaults will be scruti-
nized carefully to see that they are fairly made [630].


CONTRACT. Writ in the Superior Court dated No-
vember 30, 1973.

The action was heard by *Taveira, J.*

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative, ordered
direct appellate review.

*Richard Wait* for the defendant.

*Anthony E. Battelle* for the plaintiffs.

TAURO, C.J. This is an action in contract seeking to
recover a brokerage commission alleged to be due to the
plaintiffs from the defendant. The case was heard by a
judge, sitting without a jury, on a stipulation of facts.
The judge found for the plaintiffs in the full amount of
the commission. The defendant filed exceptions to that
finding and appealed.

The facts briefly are these: The plaintiffs are real
estate brokers doing business in Nantucket. The defend-
ant owned real estate on the island which she desired to
sell. In the past, the plaintiffs acted as brokers for the
defendant when she rented the same premises.

The plaintiffs heard that the defendant's property was
for sale, and in the spring of 1972 the plaintiff Van der
Wolk telephoned the defendant and asked for authority
to show it. The defendant agreed that the plaintiffs
could act as brokers, although not as exclusive brokers,
and told them that the price for the property was
$110,000. During this conversation there was no

mention of a commission.   The defendant knew that the
normal brokerage commission in Nantucket was five per
cent of the sale price.

In the early months of 1973, Van der Wolk located a
prospective buyer, Louise L. Cashman (Cashman), who
indicated that she was interested in purchasing the
defendant's property.   Her written offer of $100,000,
dated April 29, was conveyed to the defendant.   Shortly
thereafter, the defendant's husband and attorney wrote to
the plaintiffs that "a counter-offer of $105,000 with an
October 1st closing" should be made to Cashman.
Within a few weeks, the counter offer was orally accept-
ed, and a purchase and sale agreement was drawn up by
Van der Wolk.

The agreement was executed by Cashman and was
returned to the plaintiffs with a check for $10,500, repre-
senting a ten per cent down payment.   The agreement
was then presented by the plaintiffs to the defendant,
who signed it after reviewing it with her attorney.   The
down payment check was thereafter turned over to the
defendant.

The purchase and sale agreement signed by the parties
called for an October 1, 1973, closing date.   On Septem-
ber 22, the defendant signed a fifteen day extension of
the closing date, which was communicated to Cashman
by the plaintiffs.   Cashman did not sign the extension.
On October 1, 1973, the defendant appeared at the regis-
try of deeds with a deed to the property.   Cashman did
not appear for the closing and thereafter refused to go
through with the purchase.   No formal action has been
taken by the defendant to enforce the agreement or to
recover damages for its breach, although the defendant
has retained the down payment.

Van der Wolk presented the defendant with a bill for
commission in the amount of $5,250, five per cent of
the agreed sales price.   The defendant, through her at-
torney, refused to pay, stating that "[t]here has been no
sale and consequently the 5% commission has not been

earned." The plaintiffs then brought this action to recover the commission.[2]

In the course of dealings between the plaintiffs and the defendant there was no mention of commission. The only reference to commission is found in the purchase and sale agreement signed by Cashman and the defendant, which reads as follows: "It is understood that a broker's commission of five (5) per cent on the said sale is to be paid to . . . [the broker] by the said seller." The plaintiffs contend that, having produced a buyer who was ready, willing and able to purchase the property, and who was in fact accepted by the seller, they are entitled to their full commission. The defendant argues that no commission was earned because the sale was not consummated. We agree with the defendant, and reverse the finding by the judge below.

1. The general rule regarding whether a broker is entitled to a commission from one attempting to sell real estate is that, absent special circumstances, the broker "is entitled to a commission if he produces a customer ready, able, and willing to buy upon the terms and for the price given the broker by the owner." *Gaynor* v. *Laverdure*, 362 Mass. 828, 831 (1973), quoting *Henderson & Beal, Inc.* v. *Glen*, 329 Mass. 748, 751 (1953). In the past, this rule has been construed to mean that once a customer is produced by the broker and accepted by the seller, the commission is earned, whether or not the sale is actually consummated. *Fitzpatrick* v. *Gilson*, 176 Mass. 477 (1900). *Ripley* v. *Taft*, 253 Mass. 490 (1925). *Spence* v. *Lawrence*, 337 Mass. 355 (1958). *Talanian* v. *Phippen*, 357 Mass. 765 (1970). Furthermore, execution of a purchase and sale agreement is usually seen as con-

---

[2] The plaintiffs brought this action in four counts, two by the corporate plaintiff and two by the individual plaintiff. One count by each plaintiff was for recovery on the contract and the other stated a count in quantum meruit. At the hearing before the judge, the counts in quantum meruit were waived.

clusive evidence of the seller's acceptance of the buyer. *Roche* v. *Smith,* 176 Mass. 595 (1900). *Johnson* v. *Holland,* 211 Mass. 363 (1912). *Stone* v. *Melbourne,* 326 Mass. 372 (1950). *Richards* v. *Gilbert,* 336 Mass. 617 (1958).

Despite these well established and often cited rules, we have held that "[t]he owner is not helpless" to protect himself from these consequences. "He may, by appropriate language in his dealings with the broker, limit his liability for payment of a commission to the situation where not only is the broker obligated to find a customer ready, willing and able to purchase on the owner's terms and for his price, but also it is provided that no commission is to become due until the customer actually takes a conveyance and pays therefor." *Gaynor* v. *Laverdure, supra,* at 835.

In the application of these rules to the instant case, we believe that the broker here is not entitled to a commission. We cannot construe the purchase and sale agreement as an unconditional acceptance by the seller of the buyer, as the agreement itself contained conditional language. The purchase and sale agreement provided that the commission was to be paid "on the said sale," and we construe this language as requiring that the said sale be consummated before the commission is earned.

While we recognize that there is a considerable line of cases indicating that language providing for payment of a commission when the agreement is "carried into effect" or "when title is passed" does not create a condition precedent, but merely sets a time for payment to be made, *Alvord* v. *Cook,* 174 Mass. 120, 121 (1899); *Rosenthal* v. *Schwartz,* 214 Mass. 371, 372 (1913); *Lord* v. *Williams,* 259 Mass. 278 (1927); *Canton* v. *Thomas,* 264 Mass. 457 (1928), we do not think the course of events and the choice of language in this case fall within the *Alvord* case and its progeny. This is not a case, like *Canton* v. *Thomas,* where a separate agreement was made between the seller and the broker wherein the

broker would receive a commission "'in consideration of . . . procuring a purchaser.'" 264 Mass. at 458 (1928). Similarly, *Rosenthal* v. *Schwartz, supra,* is distinguishable on its facts, as there the seller himself defaulted, thus depriving the broker of a commission by his own acts. *Maher* v. *Haycock,* 301 Mass. 594 (1938), cited by the defendant here and by the court in the *Gaynor* case, is not necessarily to the contrary, as there the words "if . . . sold" were construed to require other than the consummation of the sale in order to avoid the prohibition against Sunday contracts, and not merely to determine whether the broker was entitled to a commission.[3]

To the extent that there are cases (such as those collected in the *Gaynor* case), unique on their facts, which may appear inconsistent with this holding and seem to indicate a contrary result, we choose not to follow them.

In light of what we have said, we construe the language "on the said sale" as providing for a "special agreement," *Gaynor* v. *Laverdure, supra,* at 832 or as creating "special circumstances," *Henderson & Beal, Inc.* v. *Glen,* 329 Mass. 748, 751 (1953), wherein consummation of the sale became a condition precedent for the broker to earn his commission. Cf. *McCarthy* v. *Daggett,* 344 Mass. 577, 579 (1962).[4] Accordingly, since the sale was not consummated, the plaintiffs were not entitled to recover the amount specified in the purchase and sale agreement.[5]

---

[3] In *Remington* v. *Pattison,* 264 Mass. 249, 251 (1928), there was language in the purchase and sale agreement like that in the present case, and recovery was denied on the basis of a local usage.

[4] Our holding here is not inconsistent with our recent decision in the *Gaynor* case, as there no language was present which would take the case out of the general rule. In that case, the purchase and sale agreement stated merely that "[a] broker's commission of $9,000 shall be paid by the seller to Lucy K. Gaynor." 362 Mass. at 830 (1973).

[5] We note here that the count of quantum meruit was waived at trial, and the action proceeded on the written contract only.

2. Although what we have said to this point is determinative of the rights of the parties, we note that the relationship and obligations of real estate owners and brokers inter se has been the "subject of frequent litigation," *Henderson & Beal, Inc.* v. *Glen, supra,* at 751. See Note, 23 Rutgers L. Rev. 83, 85 (1968). In two of the more recent cases where we were faced with this issue, we declined to follow the developing trends in this area, holding that the cases presented were inappropriate for that purpose. See *LeDonne* v. *Slade,* 355 Mass. 490, 492 (1969); *Gaynor* v. *Laverdure,* 362 Mass. 828, 838-839 (1973). We believe, however, that it is both appropriate and necessary at this time to clarify the law, and we now join the growing minority of States who have adopted the rule of *Ellsworth Dobbs, Inc.* v. *Johnson,* 50 N. J. 528 (1967).[6]

In the *Ellsworth* case, the New Jersey court faced the task of clarifying the law regarding the legal relationships between sellers and brokers in real estate transactions. In order to formulate a just and proper rule, the court examined the realities of such transactions. The court noted that "ordinarily when an owner of property lists it with a broker for sale, his expectation is that the money for the payment of commission will come out of the proceeds of the sale." *Id.* at 547. It quoted with approval from the opinion of Lord Justice Denning, in *Dennis Reed, Ltd.* v. *Goody,* [1950] 2 K.B. 277, 284-285, where he stated: "When a house owner puts his house into the

---

[6] Both Kansas and Oregon have adopted the *Ellsworth* rule in its entirety. See *Winkelman* v. *Allen,* 214 Kans. 22 (1974); *Brown* v. *Grimm,* 258 Ore. 55, 59-61 (1971). Additionally, Vermont, Connecticut and Idaho have cited the case with approval. See also *Potter* v. *Ridge Realty Corp.* 28 Conn. Supp. 304, 311 (1969); *Rogers* v. *Hendrix,* 92 Idaho 141 (1968); *Staab* v. *Messier,* 128 Vt. 380, 384 (1970). Other States and the District of Columbia also have similar, but more limited, rules which were adopted prior to the *Ellsworth* case. See generally *Gaynor* v. *Laverdure,* 362 Mass. 828, 836, n. 2 (1973).

hands of an estate agent, the ordinary understanding is that the agent is only to receive a commission if he succeeds in effecting a ·sale. . . . The common understanding of men is . . . that the agent's commission is payable out of the purchase price. . . . The house-owner wants to find a man who will actually buy his house and pay for it. He does not want a man who will only make an offer or sign a contract. He wants a purchaser 'able to purchase and able to complete as well.'" *Id.* at 549.

The court went on to say that the principle binding "the seller to pay commission if he signs a contract of sale with the broker's customer, regardless of the customer's financial ability, puts the burden on the wrong shoulders. Since the broker's duty to the owner is to produce a prospective buyer who is financially able to pay the purchase price and take title, a right in the owner to assume such capacity when the broker presents his purchaser ought to· be recognized." *Id.* at 548. Reason and justice dictate that it should be the broker who bears the burden of producing a purchaser who is not only ready, willing and able at the time of the negotiations, but who also consummates the sale at the time of closing.

Thus, we adopt the following rules: "When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his . . . there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, ˙the broker's claim is valid and must be paid." *Id.* at 551.

Accordingly, we hold that a real estate broker, under a brokerage agreement hereafter made, is entitled to a commission from the seller only if the requirements stated above are met. This rule provides necessary protection for the seller and places the burden with the broker, where it belongs. In view of the waiver of the counts in quantum meruit, we do not now consider the extent to which the broker may be entitled to share in a forfeited deposit or other benefit received by the seller as a result of the broker's efforts.

We recognize that this rule could be easily circumvented by language to the contrary in purchase and sale agreements or in agreements between sellers and brokers. In many States a signed writing is required for an agreement to pay a commission to a real estate broker. See Restatement 2d: Contracts, 418, 420 (Tent. drafts Nos. 1-7, 1973). Such a requirement may be worthy of legislative consideration, but we do not think we should establish such a requirement by judicial decision. Informal agreements fairly made between people of equal skill and understanding serve a useful purpose. But many sellers, unlike brokers, are involved in real estate transactions infrequently, perhaps only once in a lifetime, and are thus unfamiliar with their legal rights. In such cases agreements by the seller to pay a commission even though the purchaser defaults are to be scrutinized carefully. If not fairly made, such agreements may be unconscionable or against public policy.

*Exceptions sustained.*
*Judgment for the defendant.*