RICHARD L. KINCHLA *vs.* STANLEY G. WELSH & another.

Barnstable.    June 11, 1979. — September 24, 1979.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Broker*, Commission. *Contract*, With broker. *Evidence*, Depositions. *Rules of Civil Procedure*, Depositions. *Practice, Civil*, Instructions to jury, Failure to make objection, Objections to jury instructions.

In an action by a broker to recover a real estate commission alleged to be due from the defendants, there was sufficient evidence to warrant a finding that an agreement had been reached between the defendants and the broker's prospective purchaser for the sale of the real estate prior to the time that the defendants terminated their agency relationship with the plaintiff by selling their property to a different purchaser. [369-370]

In an action by a broker to recover a real estate commission alleged to be due from the defendants, there was sufficient evidence to warrant a finding that a contract between a purchaser and the defendants was not consummated due to the wrongful act or interference of the defendants in selling the property to a different purchaser. [370-372]

The judge in a civil action did not err in permitting the plaintiff to introduce in evidence a witness's deposition where the plaintiff submitted an affidavit from the witness's physician that the witness was unable to appear for medical reasons and the defendants made no objection at trial. [372]

The judge in a civil action did not err in instructing the jury several times during his charge that the issues involved "questions of credibility" where both parties had offered conflicting testimony on several material matters. [372-373]

Upon appeal in a civil action, the defendants were precluded from complaining that the judge erred in reading to the jury the requests for instructions submitted by each party since the defendants did not raise any objection at trial. [373-374]

CONTRACT. Writ in the Superior Court dated January 2, 1973.

The case was tried before *Chmielinski*, J.

*Mark A. Michelson (Franklin M. Walker, Jr.,* with him) for the defendants.

*Gerald M. Saxe* for the plaintiff.

BROWN, J. The plaintiff, Richard L. Kinchla, commenced this action in the Superior Court to recover a real estate commission alleged to be due from the defendants, Stanley G. Welsh and Marjorie W. Whittemore, doing business as Highfield Associates. The case was tried before a judge and jury, and a verdict was returned in favor of the plaintiff. The defendants have appealed, claiming that numerous errors were committed during the trial.

The pertinent evidence is summarized. The plaintiff is a real estate broker who works in the vicinity of Falmouth, Massachusetts. In 1972 the defendants owned a five hundred acre parcel of land, known as Highfield, which was located near the center of Falmouth. The defendants agreed that the plaintiff would act as a broker for the sale of Highfield, and an asking price of $2,500,000 was established. In June of 1972 the plaintiff introduced a prospective purchaser, one Richard J. Thorman, to the defendants. Thorman executed a purchase and sale agreement with the defendants for the purchase of Highfield for $2,450,000. When the time for the closing arrived, Thorman refused a tender of the deed, and the deal fell through. The plaintiff and defendants then agreed that the plaintiff would continue his efforts to find a suitable buyer for the defendants on the same terms and conditions as contained in the Thorman agreement. To that end the plaintiff attempted to contact one Eugene F. Merkert, but failing so to do, he spoke to Merkert's associate, Carl A. Whitman. Whitman visited Highfield with the plaintiff and reported back to Merkert.

The plaintiff offered evidence to the effect that on October 6, 1972, Whitman contacted the plaintiff and told him that Merkert would purchase Highfield for the defendants' then asking price of $2,450,000. The plaintiff also testified that on the same day he met with the defendant Welsh to convey Merkert's desire to buy the property.

According to the plaintiff, at that meeting, held in his office, Welsh accepted Merkert as a purchaser and suggested to Kinchla that a sales agreement be drawn up immediately.[1] A closing date was set, and a down payment was agreed to.

The defendants' evidence contradicted this. According to the defendants, the plaintiff only reported that he had found a prospective buyer named Merkert, but no agreement had been reached and no purchase and sale agreement was to be signed. It is undisputed, however, that later in the day on October 6, Welsh met with Ruth Burrough, a real estate broker and discussed with her the possible sale of Highfield to one Josiah K. Lilly. On October 11 Burrough and Welsh met and Burrough presented Lilly's offer of $2,000,000.[2] On October 12 Welsh received a letter from Burrough confirming the sale to Lilly. Burrough and Welsh met again to work out the details of the sale, and on October 24 the parties signed a purchase and sale agreement.[3] There was evidence that the plaintiff had been unable to reach Welsh from October 11, but on October 25 Welsh informed the plaintiff of the sale to Lilly.

1. The defendants argue that the plaintiff cannot recover because no contract was ever created between the defendants and Merkert for the sale of Highfield. They contend that all the details had not been worked out prior to the time that their agency relationship with the plaintiff was terminated by the sale to Lilly. An owner of property may ordinarily withdraw his offer to sell at any time before a contract comes into existence, thereby terminating any agency relationship with a broker. *Elliot* v.

[1] It is undisputed that, although the agreement was apparently drafted shortly thereafter, it was never signed by the parties.

[2] There was evidence that on October 9 Welsh rejected an offer by Lilly of $1,500,000 as being too low.

[3] The parcel eventually sold did not include a portion of beach property or a fourteen acre segment in another area.

*Kazajian*, 255 Mass. 459, 461-462 (1926). Here, however, there was evidence from which the jury could have found that the agency relationship had not been terminated before a contract came into existence. The jury were entitled to believe the plaintiff's testimony that he had informed the defendant Welsh that Merkert had agreed to purchase Highfield for the defendants' asking price and that all details necessary for the sale of Highfield had been worked out. The jury could have believed that Welsh conveyed to the plaintiff his acceptance of Merkert as a purchaser. See *Gaynor* v. *Laverdure*, 362 Mass. 828, 834 (1973). They could also have believed the plaintiff's testimony that Welsh acknowledged to him (Kinchla) that the property had been sold to Merkert. In short, the jury could have found that an agreement had been reached before the defendants' sale to Lilly and before there had been any other termination of the agency relationship.

In circumstances where there is conflicting testimony on the question whether a contract has been created, the issue is one for the jury. *Beach & Clarridge Co.* v. *American Steam Gauge & Valve Mfg. Co.*, 202 Mass. 177, 183 (1909). *Daniel J. Tierney, Jr., Inc.* v. *T. Wellington Carpets, Inc., ante* 237, 239 (1979).

The jury could have found that Merkert had taken steps (not fully effectuated) to assemble a development partnership and to obtain bank financing. The jury were not required to find, as the defendants assert, that the approval of legal counsel, Merkert's failure to inquire of the town planning board regarding the property, or the absence of any discussion of the tenants who remained on the property were conditions precedent to or essential details of a contract of sale.

Notwithstanding the above, the defendants argue that the plaintiff is entitled to a broker's commission only if it is shown that a contract was created and that the failure to consummate the contract was due to the defendants' bad faith. They argue that there is no evidence from which a finding of bad faith could be made. Under *Tris-*

*tram's Landing, Inc.* v. *Wait,* 367 Mass. 622 (1975), a broker has not earned his commission until he produces a purchaser who "completes the transaction by closing the title in accordance with the provisions of the contract." *Id.* at 629. Here there was no completion of the contract by Merkert. However, in *Tristram's Landing, Inc.* the court went on to say that "if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid." *Id.* We do not think that this requires that the broker make a showing that the seller acted in bad faith.[4] In the circumstances of this case we think the plaintiff's evidence warranted a finding that the contract was not consummated due to the defendants' "wrongful act or interference." The jury could have concluded that the plaintiff had presented a purchaser who was ready, willing and able to buy Highfield, that a contract had been created, and that the failure to consummate the contract was due to the default of the defendants. See *Ellsworth Dobbs, Inc.* v. *Johnson,* 50 N.J. 528, 551 (1967), cited and followed in *Tristram's Landing, Inc.* There was evidence that the defendant Welsh refused to complete the transaction even though he knew the property had been "sold" to Merkert and that he was backing out of the deal because he had been "pressured" to do so by others.[5] The jury could have inferred that Welsh's unavailability from October 11 to October 25 was a part of his efforts to subvert the signing or finalizing of the agreement he had made with Merkert. We think that the jury could thus properly conclude that Welsh engaged in a wrongful act

---

[4] In reaching our decision, it is not necessary for us to decide whether in the circumstances of the present case bad faith was made out by evidence that the second broker received a commission of $50,000, whereas the plaintiff would have been entitled to $175,000. But see note 3, *supra.*

[5] There was evidence that those persons pressured Welsh by stating that "[y]ou don't know who Kinchla will bring in to develop this [parcel]. He might bring the kikes in again."

or interfered with the plaintiff's attempts to complete the sale, thereby entitling the plaintiff to a broker's commission. *Zisman* v. *Spitz*, 259 Mass. 392, 393 (1927). See *Lipis* v. *Landano*, 7 Mass. App. Ct. 894 (1979).

2. The defendants contend the judge erred when he permitted the plaintiff to introduce in evidence the deposition of Eugene F. Merkert, instead of requiring him to testify in court before the jury. We disagree. Rule 32(a)(3)(C) of the Massachusetts Rules of Civil procedure, 365 Mass. 788 (1974), permits the use of a deposition of a witness for any purpose if the court finds "that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment." The plaintiff submitted an affidavit from Merkert's personal physician which stated that "Merkert, due to his medical condition, has been, *and is still* unable to appear and testify in any trials at this time." Based on this affidavit, the judge permitted the introduction of Merkert's testimony in evidence by means of a deposition. The record discloses that the defendants made no objection to the taking of Merkert's deposition, and no objection was raised when the plaintiff introduced it in evidence.[6] If the defendants were dissatisfied with the sufficiency of the evidence of Merkert's inability to testify, the matter should have been called to the judge's attention. See Mass.R.Civ.P. 46, 365 Mass. 811 (1974).

3. The defendants raise several objections to the judge's instructions to the jury. Considering the charge in its entirety, see *Posner* v. *Minsky*, 353 Mass. 656, 660 (1968), we conclude that there was no reversible error.

[6] Although the defendants argue that an objection to the admission in evidence of Merkert's deposition was made by means of a motion entitled "Motion to Limit Admissibility of Certain Deposition Testimony," an examination of the docket fails to show that this motion was ever presented to the judge. We were also unable to locate the motion among the original papers filed in the case. See *Ainslie* v. *Ainslie*, 6 Mass. App. Ct. 692, 695 n.3 (1978).

There was nothing improper in the judge's telling the jury on several occasions that the issues involved "questions of credibility." Both parties offered conflicting testimony on several material matters. There was disagreement on the substance of several conversations regarding the negotiations leading toward the creation of a contract. Thus in order to determine whether a contract had been created, and, if it had been created, whether it had been properly revoked, the jury had to decide whether to believe the plaintiff's or Welsh's testimony regarding statements purportedly made by Welsh. We think that the judge committed no prejudicial error by frequently mentioning during his charge to the jury that the credibility of the witnesses was at issue.

The judge, as part of his charge to the jury, read to them the requests for instructions submitted by each party. The defendants claim that this was error because the two sets of requests were incompatible and contradictory, and that reading both sets to the jury was misleading and confusing. They further argue that the plaintiff's requests for instructions, which were read to the jury, were erroneous.[7] At the conclusion of his charge the judge asked both counsel whether there was anything they desired to add; both responded in the negative. Moreover, it appears from the record that there was no objection to any portion of the charge or to the reading of both parties' requests for instructions in accordance with Mass.R.Civ. P. 51(b), 365 Mass. 816 (1974), "at any time prior to the retirement of the jury to deliberate its verdict." *Worcester* v. *Eisenbeiser,* 7 Mass. App. Ct. 345, 349 (1979). In the absence of an objection the judge was not given an opportunity to make any corrections which might have been

---

[7] We note in passing that the record indicates that prior to the giving of the charge to the jury the defendants specifically assented to certain of the plaintiff's requests for instructions. Having assented to the giving of those requests the defendants cannot now claim the judge erred in doing so. See *Dalton* v. *Post Publishing Co.,* 328 Mass. 595, 599 (1952).

necessary had the asserted errors been brought to his attention in a timely manner[8] and the defendants are therefore precluded from complaining on appeal about the instructions given. *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489, 491 (1977). See *Squires* v. *Fraska,* 301 Mass. 474, 477-478 (1938). In any event, if there was any possible error or confusion, it was cured by the judge's other instructions.

And finally, for reasons already discussed, we find no error in the judge's denial of the defendants' motions for a directed verdict and for judgment notwithstanding the verdict, nor any abuse of discretion in the judge's denial of the motion for a new trial.

> *Judgment affirmed.*
> *Order denying motion for*
> *new trial affirmed.*

---

[8] We do not regard defense counsel's statement that "we would except to the specific charges given on behalf of the Plaintiff" as constituting compliance with the requirements of Mass.R.Civ.P. 51(b). See *Narkin* v. *Springfield,* 5 Mass. App. Ct. 489, 491-492 (1977). Moreover, the record reflects that this statement was part of a side bar conference which began with a statement by counsel for the plaintiff, that "Just for the record, your Honor, *after the jury has left* we do want to except to the charge ..." (emphasis supplied).