**John E. BENNETT, d/b/a Bennett Realty, etc., Plaintiff, Appellant,**

**v.**

**James P. McCABE and John M. Zitaglio, Defendants, Appellees.**

**No. 86–1343.**

United States Court of Appeals, First Circuit.

Argued Oct. 8, 1986.

Decided Jan. 9, 1987.

Alan B. Rubenstein with whom Rackemann, Sawyer & Brewster, was on brief, for plaintiff, appellant.

Barry C. Klickstein, with whom Donna Lannon and Forman, Roberts, Klickstein & Levy, were on brief, for defendants, appellees.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

In this case we are called upon to determine whether Massachusetts law permits a broker to recover a commission when he provides a ready, willing, and able purchaser for a commercial property, but the transaction fails due to an unknown defect in the seller's title. Appellant, a real estate broker, filed this diversity action against the sellers of a motel seeking to recover his commission, but the court below held that neither Massachusetts common law nor the express contract entered into by the parties supported his claim. Appellant now seeks review of the district court's order granting the sellers' motion for summary judgment and denying his own cross-motion for summary judgment. We reverse.

### I. *Factual Setting.*

The facts of this case are not in dispute. Appellant John E. Bennett is a licensed Massachusetts real estate broker who conducts his brokerage business under the name of Bennett Realty. Appellees James P. McCabe and John M. Zitaglio ("sellers") are the owners of "Ye Old Whaler," a summer motel located in Provincetown. During 1984, pursuant to an informal agreement with the sellers, Bennett succeeded in locating a purchaser for the motel. The sellers accepted the purchaser's $400,000 offer and the two parties entered into a binding purchase and sale agreement on May 15, 1984. In accordance with the terms of the agreement, the purchaser paid a ten percent deposit ($40,000), to be held by Bennett, and the closing was scheduled for June 1, 1984.

A defect in the sellers' title, however, prevented the parties from consummating the transaction.[1] The closing was initially postponed until July 1, 1984, but the sellers were unable to remedy the defect in their title even given this additional time. Recognizing their inability to perform, the sellers instructed Bennett to return the purchaser's deposit. Bennett returned the deposit and then commenced this action in federal district court on July 23, 1984. He claims that, despite the failure of the transaction, he is nevertheless entitled to his six percent commission ($24,000) because only the sellers' inability to convey good title prevented the deal from closing.

It is undisputed that Massachusetts law governs this case and that there are no genuine issues of material fact precluding summary judgment. Furthermore, both parties agree that neither of the sellers had any knowledge of the title defect at the time they entered the agreement to sell the property. Finally, the sellers have admitted that the purchaser located by Bennett was at all times ready, willing, and able to perform and that the sole reason for the failure of the transaction was their own inability to convey good title. Consequently, the only issue we must decide is whether, as a matter of law, Bennett is entitled

---

1. Paragraph 4 of the purchase and sale agreement required the sellers to convey to the purchaser "a good and clear record and marketable title."

to receive his six percent broker's commission.[2]

## II. Common Law Right To Commission.

In *Tristram's Landing, Inc. v. Wait,* 367 Mass. 622, 327 N.E.2d 727 (1975), the Massachusetts Supreme Judicial Court adopted the rule originally announced by the Supreme Court of New Jersey in *Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 236 A.2d 843 (1967):

> When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his ... there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid.

*Tristram's Landing,* 367 Mass. at 629, 327 N.E.2d at 731 (quoting *Ellsworth Dobbs,* 50 N.J. at 551, 236 A.2d at 855). Relying upon *Tristram's Landing,* the sellers argue, and the court below held, that Bennett is not entitled to his commission because the failure to complete the contract did not result from conduct on the part of the sellers that amounted to a "wrongful act or interfer-

ence." Our analysis of the *Tristram's Landing* decision, the authority on which it relies, and the policy it serves, however, convinces us that Massachusetts law does not restrict a broker's entitlement to receive a commission on a failed transaction only to those cases where a seller's default involves affirmative conduct rising to the level of a wrongful act or interference.

Before we embark upon an analysis of *Tristram's Landing* and its effect on Massachusetts law, we note that the basic question of whether a broker should receive a commission when a transaction fails due to an unknown title defect is not an issue of first impression in Massachusetts. It is undisputed that, prior to *Tristram's Landing,* a seller had to pay a broker's commission whenever the broker provided a ready, willing, and able purchaser, even if the transaction was not consummated due to a technical default by the seller. *See LeDonne v. Slade,* 355 Mass. 490, 491–92, 245 N.E.2d 434, 435 (1969). The only question before us on this appeal, therefore, is whether *Tristram's Landing* worked a change in this aspect of the law.

### A. *Tristram's Landing.*

*Tristram's Landing* involved a default by a prospective purchaser and the Massachusetts Supreme Judicial Court held simply that, absent an explicit contractual provision, a broker whose customer defaults after entering a contract to purchase the property is not entitled to a commission. Likewise, the court's dictum establishes beyond doubt that a broker is entitled to receive a commission if the seller engages in conduct that wrongfully interferes with

---

2. A threshold consideration in cases such as this is whether the contract governing the relationship between the seller and broker—here, the purchase and sale agreement—provides unambiguously that the broker may recover a commission only in the event the parties successfully complete the transaction. *See Capezzuto v. John Hancock Mutual Life Insurance Co.,* 18 Mass.App.Ct. 46, 49 n. 3, 462 N.E.2d 1131, 1133 n. 3 (1984), *rev'd on other grounds,* 394 Mass. 399, 476 N.E.2d 188 (1985); *Gaynor v. Laverdure,* 362 Mass. 828, 836, 291 N.E.2d 617, 622 (1973). In the case at bar, however, the sellers

do not contend, nor do we find, that the provisions of the contract preclude us from considering Bennett's common law right to receive a commission.

Both parties have briefed and argued the related issue of whether several interrelated provisions of the purchase and sale agreement provide an independent contractual basis for Bennett's recovery of a commission despite the failure of the transaction. Because we find that Bennett was entitled to recover his commission based on existing Massachusetts case law, we need not reach this issue.

the completion of the contract. The apparent clarity and breadth of the *Tristram's Landing* opinion, however, is marred by the Supreme Judicial Court's failure to address the vast gray area of sellers' defaults that do not rise to the level of "wrongful act or interference." In the case at bar, for instance, it is undisputed that the sellers were "innocent," in that they had no knowledge of the technical defect in their title when they entered the purchase and sale agreement. We must therefore look beyond the operative language of *Tristram's Landing* to determine the scope of the legal regime established by that case.

We begin by analyzing the underlying purpose that animated the Massachusetts SJC to adopt the rule of *Ellsworth Dobbs*. Most helpful in this regard is the recent opinion of the Massachusetts Appeals Court in *Capezzuto v. John Hancock Mutual Life Insurance Co.*, 18 Mass.App.Ct. 46, 462 N.E.2d 1131 (1984), *rev'd on other grounds*, 394 Mass. 399, 476 N.E.2d 188 (1985).[3] As that court noted, under the law in effect prior to *Tristram's Landing*, a broker became entitled to a commission simply by demonstrating that he had produced a ready, willing, and able purchaser. Furthermore, the mere act of entering into a purchase and sale agreement with a prospective purchaser later prevented the seller from showing, as a defense against the broker's claim, that the purchaser was in fact unable or unwilling to close the transaction. *Id.* at 47, 462 N.E.2d at 1132. This so-called "acceptance rule" led the Massachusetts courts to treat, often inappropriately, the seller's signature on a contract as a binding acceptance of the fact that the

broker's purchaser was ready, willing, and able. *Id.* at 47–48, 462 N.E.2d at 1132–33.

The patent injustice of the "acceptance rule" becomes evident when one considers that the seller remained liable for the broker's commission even if the broker's client later failed to perform the contract. *See, e.g., Gaynor v. Laverdure*, 362 Mass. 828, 291 N.E.2d 617 (1973) (applying "acceptance rule" to award broker a commission despite purchaser's default). As the Appeals Court stated in *Capezzuto*, the effect of the rule "was to subvert the essential concept that the broker earned his commission only if he found a customer ready, willing, and able to buy the property." *Capezzuto*, 18 Mass.App.Ct. at 48, 462 N.E.2d at 1133. The *Tristram's Landing* court, like the *Ellsworth Dobbs* court before it, recognized the inequity of this rule[4] and sought to remedy its ill effects by crafting a new rule to govern the relationship between sellers and brokers in cases where the broker's customer defaults on its contractual obligations. In *Tristram's Landing*, therefore, the Massachusetts court overruled the long line of cases culminating in *Gaynor* and held that a seller need not pay a broker's commission if the broker's customer defaults on a signed purchase and sale agreement. *Id.* 367 Mass. at 629–30, 327 N.E.2d at 731.

The foregoing analysis demonstrates that both *Tristram's Landing* and *Ellsworth Dobbs* sought to remedy an injustice that is not present in the case at bar. The rule established by those cases has little or no impact on cases involving defaults by a seller of real property. Indeed, in its statement of the new rule, the *Ellsworth Dobbs*

---

**3.** Although the Supreme Judicial Court reversed the judgment of the Appeals Court in *Capezzuto*, it did not quarrel with the lower court's interpretation of *Tristram's Landing*. In fact, the SJC appeared to agree that *Tristram's Landing* was not directed to situations where the seller prevented completion of the transaction: "[I]n situations where the seller is responsible for the failure to complete the transaction, no commission is owing unless the seller has signed a binding agreement with the broker's client." *Capezzuto v. John Hancock Mutual Life Insurance Co.*, 394 Mass. 399, 403, 476 N.E.2d 188, 190 (1985). The SJC reversed the Appeals

Court's judgment because, contrary to the facts of the instant case, the seller and purchaser in *Capezzuto* had not yet entered a purchase and sale agreement.

**4.** The Supreme Judicial Court noted in *Tristram's Landing* that "the principle binding 'the seller to pay commission if he signs a contract with the broker's customer, regardless of the customer's financial ability, puts the burden on the wrong shoulders.'" *Tristram's Landing*, 367 Mass. at 629, 327 N.E.2d at 731 (quoting *Ellsworth Dobbs*, 50 N.J. at 548, 236 A.2d at 853).

court implicitly supports awarding a broker a commission *whenever* a seller defaults, whether innocently or wrongfully: "In short, *in the absence of default by the seller*, the broker's right to a commission against the seller comes into existence only when his buyer performs in accordance with the contract of sale." *Ellsworth Dobbs*, 50 N.J. at 551, 236 A.2d at 855 (emphasis supplied). Accordingly, we agree with the Massachusetts Appeals Court that "[i]t was not the purpose of the *Tristram's Landing* case to deprive the broker of his commission where he produces a customer ready, willing, and able to buy on the precise terms set by the seller but the seller has a change of heart *or otherwise defeats the transaction.*" *Capezzuto*, 18 Mass.App.Ct. at 48–49, 462 N.E.2d at 1133 (emphasis supplied).

The only Massachusetts decision that has given us pause is the recent case of *Lewis v. Emerson*, 391 Mass. 517, 462 N.E.2d 295 (1984). In *Lewis* the Supreme Judicial Court considered, among other issues, whether a broker is entitled to a commission for a transaction that fails due to affirmative wrongful conduct by the sellers. The SJC addressed the question by paraphrasing *Tristram's Landing* in the following manner:

> Three requirements must be met before a broker's commission is due: first, production by the broker of a purchaser ready, willing, and able to perform on terms fixed by the seller; second, entry into a contract to purchase by buyer and seller; and third, completion by passage of title in accordance with the agreement, unless closing is prevented by the *wrongful conduct* of the seller.

*Lewis*, 391 Mass. at 524, 462 N.E.2d at 300 (emphasis supplied). This language appears to support both the decision below and the position advocated by the sellers on appeal, although neither the district court's

memorandum and order nor the appellees' brief makes mention of this case.

In light of this recent decision we considered certifying the pivotal question of law in the instant case to the Massachusetts Supreme Judicial Court. Upon reflection, however, we have satisfied ourselves that, for the following reasons, the *Lewis* case was not designed to change Massachusetts law and that, hence, the analysis set forth above is correct. First, the case contains numerous issues, each of which is dealt with summarily in a numbered paragraph. Second, the broker's fee issue is by no means the primary issue in the case. Third, the fact that the case involved affirmative wrongful conduct by the sellers made *Lewis* an easy case, governed directly by the "wrongful act or interference" language of *Tristram's Landing*. Finally, only a year after issuing its *Lewis* opinion, the Massachusetts SJC quoted verbatim the language of *Tristram's Landing*, rather than relying on the reformulation of the rule as stated in *Lewis*. See *Capezzuto*, 394 Mass. at 399, 476 N.E.2d at 188.

Given this congery of factors, we can only conclude that the *Lewis* court did not intend to make new law concerning the circumstances that justify the recovery of a broker's commission. It appears instead that, in the course of addressing an obvious issue in summary fashion, the Supreme Judicial Court unintentionally paraphrased *Tristram's Landing* in a deceptive manner. We continue to believe that *Tristram's Landing* accurately states the law of the Commonwealth and should form the basis for our decision in the instant case. Accordingly, because we do not read *Tristram's Landing* as changing the Massachusetts law regarding cases involving sellers' defaults, we hold that the case at bar is controlled by *LeDonne v. Slade*, 355 Mass. at 490, 245 N.E.2d at 434, and that Bennett is entitled to recover his commission on the facts of this case.[5]

---

5. Our holding today is consistent with the decision of the only other court to consider this issue in terms of Massachusetts law. The court in *Benn v. Halyard Realty Trust (In re Halyard Realty Trust)*, 37 B.R. 260 (Bankr.D.Mass.1983), stated: "When a broker finds a buyer who enters into a purchase and sale agreement which is not consummated because of the seller's inability to deliver good title as promised, the bro-

## B. *Policy Considerations.*

Although the language and rationale of *Tristram's Landing* alone convince us that the Massachusetts SJC would find in favor of Bennett, we add that sound policy considerations also support our holding today. Appellees would have us decide, based on *Tristram's Landing,* that a seller is liable to pay a commission only if he acts wrongfully to interfere with the completion of the real estate transaction. In other words, a broker could not prevail even if the seller's "innocent" or "technical" default was the sole reason preventing the broker's "ready, willing, and able" purchaser from enjoying the fruits of the purchase and sale agreement. We refuse to believe, however, that the SJC would choose to adopt this approach were it faced with the facts of the instant case.

First, requiring a broker to show that the seller acted wrongfully to interfere with the performance of the contract would have the practical effect of forcing courts to make fine distinctions concerning the defaulting seller's degree of culpability in every case. In other words, by reading *Tristram's Landing* as requiring brokers to demonstrate affirmative wrongdoing as a necessary element in such cases, we would be fashioning a rule of very difficult application. *See, e.g., Kinchla v. Welsh,* 8 Mass.App.Ct. 367, 394 N.E.2d 978 (1979) (broker need not show seller's "bad faith" to recover commission). We believe that if confronted with the situation we face today—a sales transaction involving commercial property—the Massachusetts SJC would prefer a bright line rule entitling a broker to receive a commission whenever the seller defaults on a binding purchase and sale agreement, because such a rule is easier to understand and apply.

Second, we are persuaded that the SJC would place the burden of avoiding even "innocent" or "technical" defaults, at least in the commercial context we address today, on the seller rather than the broker. Especially when represented by competent counsel, as here, the seller of a commercial property is obviously in a superior position to ascertain the validity of his title, to assess his ability to provide "technical" warranties, and generally to ensure that he can perform *all* of his contractual obligations.[6] We fail to see the wisdom of penalizing a broker, like Bennett, by effectively holding him responsible for the risk that the seller will fail to satisfy one or more of the technical obligations enumerated in the contract.

Finally, existing case law supports the view we espouse in this case. Most other states permit a broker to recover a commission where the transaction fails as a result of a defect in the seller's title. *See, e.g., Tyron Realty Co. v. Hardison,* 62 N.C. App. 444, 302 S.E.2d 895, 898 (1983); *Emerich v. Leviton,* 117 Ill.App.3d 832, 73 Ill. Dec. 301, 303–304, 454 N.E.2d 45, 47–48 (1983); *Klawitter v. Straumann,* 255 N.W.2d 407, 410–11 (Minn.1977); *Sarna v. Fairweather,* 248 Ark. 742, 453 S.W.2d 715, 718 (1970); *J.J. Gumberg Co. v. Walworth Co.,* 346 F.2d 679, 683 (3d Cir.1965) (Pennsylvania law). *See generally* Annotation, 28 A.L.R. 4th 1007 (1984). Even Vermont, which is one of the growing minority of jurisdictions to adopt the *Ellsworth Dobbs* rule, concurs with the view that a broker should recover a commission in the situation presented by the case at bar. *Sexton v. Neun,* 131 Vt. 372, 306 A.2d 113, 118 (1973).

### III. *Conclusion.*

■ We are unable to discern in *Tristram's Landing,* or in any other subsequent Massachusetts case, an intent to reverse the preexisting common law rule that requires a seller to pay a broker's commission when the seller's default causes a real

ker has earned his commission even though title has not passed." *Id.* at 263.

6. As the Minnesota Supreme Court has opined: If the principal has reason to doubt his capacity to produce good title, he may not induce the broker to perform services which prove to be futile. The principal is in a better position than the broker to determine what imperfections there are and what signatures must be obtained to bring about a valid conveyance. *Mayberry v. Davis,* 288 Minn. 73, 178 N.W.2d 911, 913 (1970).

estate transaction to collapse. Furthermore, in light of the relevant policy considerations, we believe that the Massachusetts Supreme Judicial Court would prefer a bright line rule that places the burden of avoiding even technical defaults on the seller of a commercial property. Accordingly, we hold that appellant Bennett is entitled to .recover his commission from appellees because he succeeded in locating a ready, willing, and able purchaser for their property and only their default, due to an inability to convey good title, caused the transaction ultimately to fail.

*Reversed.*