van Gestel, J.
This case comes before the Court on two motions. The plaintiffs seek a real estate attachment. The defendants seek summary judgment. For the reasons stated below, the Court addresses the summary judgment motion only.
BACKGROUND
Because of the decision that follows, the Court will accept the plaintiffs’ statement of the facts.
On January 4, 1995, the defendant Andover Building & Development Corp. (“Andover Building”), hired RE/MAX Preferred, Inc. (“RE/MAX”) to market and sell a new house to be built in Andover, Massachusetts. In the listing agreement, Andover Building agreed to pay RE/MAX a broker’s commission of 5% of the sales price when RE/MAX found a buyer who signed a purchase and sales agreement and the property was sold to that buyer.
The listing agreement is between RE/MAX and Andover Building. Section 2 thereof reads, in material part, as follows:
SELLER(S) agree to pay a brokerage fee of 5% of the agreed upon sales price under any one of the following circumstances:
A. If during the term of this agreement, the SELLER(S) enters into a contract for Purchase for this property for the price named herein, or for any other price, or upon other such terms which may be acceptable to them and the property is sold pursuant to said agreement, regardless of whether the closing takes place after termination of this agreement.
While the listing agreement was in effect, RE/MAX, through one of its brokers, found a buyer for the property at the price and on terms agreed to by Andover Building. The closing was to take place on October 1, 1995.
At the time of executing the agreement to sell, the property was owned by the other defendant Butler Properties, Inc. (“Butler”). There is an issue, that does not need to be resolved at this time, as to the relationship between Andover Building and Butler.
In February 1995, Andover Building began site work at the properly. No formal town approval was required before the commencement of this work. Before a foundation could be erected at the property, however, Andover Building was aware that both a foundation and a building permit had to be obtained from the Town of Andover.
On July 12, 1995, Andover Building began to pour the foundation walls for the house, but did not first obtain from the town either a written approval or a permit therefor. Additionally, Andover Building initiated a sewer hook-up for the property before receiving a necessaiy permit from the town.
Because of the failure to obtain the permits required, on July 14, 1995 the Andover Inspector of Buildings issued a cease and desist order, requiring that all work cease at the site. Ultimately, because of the failure to complete construction of the house to be sold, at least in part because of the failure to get the needed permits, the buyers, legally, cancelled the purchase and sales agreement.
DISCUSSION
The facts, accepted here for purposes of assessing the defendants’ motion only, present an apparently unresolved issue in the wake of the rule laid down in Tristram’s Landing, Inc. v. Wait, 367 Mass. 622 (1975). In Tristram’s Landing it was held that “[w]hen a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) .the purchaser completes the transaction by closing the title in accord with the provisions of the contract.” Id. at 629.
Tristram’s Landing recognized an exception to the foregoing requirements. In circumstances where “the failure of completion of the contract results from the wrongful act or interference of the seller, the broker’s claim is valid and must be paid.” Id. It is the interpretation of the meaning of the phrase “wrongful act or interference” as applied to the conduct of the seller that is in issue here. Must that wrongful conduct be the product of a bad faith effort to thwart the broker’s receipt of his commission or the buyer’s opportunity to acquire the property at the agreed upon price? It is this issue that remains undecided in the Massachusetts appellate case law that has followed Tristram’s Landing.
*284 Considering the expressed reasons behind Tristram’s Landing, and the application and comments by appellate courts since that decision, this Court believes that a bad faith component must be applied to the seller’s wrongful act, without proof of which a broker may not recover a commission if the closing does not occur.
All three of Hillis v. Lake, 421 Mass. 537, 545-46 (1995), Capezzuto v. John Hancock Mut. Life Ins. Co., 394 Mass. 399, 403 (1985), and Tristram’s Landing, supra at 629, look with favor upon the seller’s expectation of paying the broker’s commission out of the proceeds of the sale. The broker is said to be in a better position to protect his own expectations of compensation by including, in the brokerage contract, a provision that the broker is entitled to his compensation when he produces a ready, willing and able buyer whom the seller, for whatever reason, refuses to accept. See Hillis, supra, at 546; Capezzuto, supra, at 404.
Both Hillis and Capezzuto rested their conclusions that no commissions were due, in part at least, on the absence of bad faith on the part of the sellers. Hillis, supra, at 545; Capezzuto, supra, at 404.
In Hillis, the more recent case, the Supreme Judicial Court went out of its way to explain that the Court of Appeals for the First Circuit in its decision in Bennet v. McCabe, 808 F.2d 178 (1st Cir. 1987), was incorrect in its interpretation of the Massachusetts law on the subject.
The Court of Appeals held that the seller would be liable for a broker’s commission even if the seller’s default was innocent, concluding that [the SJC] would adopt this conclusion if it were faced with facts like those in the Bennett case. Id. at 182. In so doing, the Court of Appeals assumed that [the SJC] would prefer a “bright line rule” which would award a broker the commission when the seller defaults on a binding agreement whether the default is innocent or motivated by bad faith. Id. at 183-84.
The Bennett decision does not state Massachusetts law correctly. Our law is as set forth in [Tristram’s Landing, Capezzuto, and others] described above. In circumstances like those present in this case and in the Bennett case, the broker is not entitled to a commission unless it appears that the closing is prevented by wrongful conduct on the seller’s part.
Hillis, supra, at 545.
In the case before the Court, the seller committed a wrongful act in not getting the requisite permits before starting construction.[1] But that activity was in an obvious effort to facilitate the closing by expediting the construction of the house in issue. It was not in any way a bad faith attempt to deprive the broker of its commission or to interfere with the sale to the buyers on the terms and conditions agreed to. While it may sound oxymoronic, the wrongful conduct here was innocent.
For the reasons stated above, summary judgment is ALLOWED in favor of the defendants, and the plaintiffs’ complaint must be dismissed.
Given this order, it is not necessary to address the other issues raised: e.g., the plaintiffs’ request for a real estate attachment, the significance of the relationship between the two defendant corporations, and the status of the various plaintiffs.

If the facts asserted by the broker are accepted, as they are for purposes of this decision only, then the closing did not occur because the necessary municipal permits were not obtained before construction of the foundation and the sewer line began. The seller, of course, contends that it was not the permit problems that caused the buyers to walk away, legally, from the deal. Should it be decided that this Court’s decision imposing a bad faith requirement is legally incorrect, then the seller must be permitted to present the facts on its side of the story.