**EASTERN SCIENTIFIC COMPANY,**
Plaintiff, Appellee,

v.

**WILD HEERBRUGG INSTRUMENTS,**
INC., Defendant, Appellant.

No. 77–1286.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1977.
Decided March 17, 1978.

Robert P. Lynn, Jr., Garden City, N. Y., with whom Lynn, Perlman & Ledwith, Garden City, N. Y., and Deming E. Sherman, and Edwards & Angell, Providence, R. I., were on brief, for defendant, appellant.

Dennis J. Roberts, II, Providence, R. I., with whom Berndt W. Anderson and Roberts & Willey Inc., Providence, R. I., were on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff, Eastern Scientific Co. [hereinafter Eastern], is in the business of selling scientific instruments. During the period from 1961 through 1972 it marketed the products of the defendant, Wild Heerbrugg Instruments, Inc. [hereinafter Wild], an importer and distributor of scientific equipment manufactured by Wild Heerbrugg, Ltd., a Swiss company. Wild terminated Eastern as a dealer of its products in February, 1973. Eastern, claiming that Wild had violated the anti-trust laws, brought suit under § 1 of the Sherman Act, 15 U.S.C. § 1.

According to Eastern, Wild demanded that it not sell any of Wild's products outside its assigned area of Rhode Island at less than list price. Wild imposed no restrictions on Eastern's sale activities within Rhode Island. Eastern submitted evidence that it complied with Wild's policy out of fear that if it did not do so it would lose its dealership. The two companies disagreed on several occasions as to whether Eastern should sell below list outside of Rhode Island and Eastern argues that this eventually led to its termination. The practice Eastern complains of can best be described as a policy of territorial restriction enforced by price maintenance restraints. The district court instructed the jury that conduct of this nature amounted to a per se violation of the Sherman Act. The jury found in favor of plaintiff and Wild appeals.

Wild's first argument on appeal is that since the time of the district court's decision the law in this area has changed to the extent that a new trial is required. Because we agree with this position, we see no need to address ourselves to any of the other issues raised in this appeal.

A few days after the conclusion of the district court proceedings the Supreme Court issued its opinion in *Continental TV, Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Prior to that decision, the law relating to territorial restrictions was governed by the holding of *United States v. Arnold, Schwinn and Co.*, 388 U.S. 365, 379, 87 S.Ct. 1856, 1865, 18 L.Ed.2d 1249 (1966); ". . . where a manufacturer sells products to his distributor subject to territorial restrictions upon resale, a per se violation of the Sherman Act results. . . . [t]he same principle applies to restrictions of outlets with which the distributors may deal and to restraints upon retailers to whom the goods are sold. Under the Sherman Act it is unreasonable without more for a manufacturer to seek to restrict and confine areas or persons with whom an article may be traded after the manufacturer has parted with dominion over it." *GTE Sylvania* overruled this per se rule and instructed courts to apply a rule of reason standard in evaluating territorial restrictions.

A per se violation can be found simply by determining that alleged practices existed "without elaborate inquiry as to the precise harm [the suspect practices] . . . caused or the business excuse for their use." *Northern Pac. R. Co. v. United States*, 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). In contrast, the rule of reason requires the court to analyze "whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraints was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be attained—all are relevant facts. This is not because a good intention will save an otherwise objectionable regulation or the reverse; but because knowledge of the intent may help the court to interpret facts and to predict consequences." *Chicago Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918). Determining that a practice exists is only the very first step in deciding a case under the rule of reason. Since the trial below and the district court's instructions to the jury were premised on defendant's conduct amounting to a per se violation of the law, the district court's judgment must be reversed and the case remanded for further proceedings consistent with the correct legal standard. *See Adolph Coors Co. v. A and S Wholesalers, Inc.*, 561 F.2d 807 (10th Cir. 1977); *General Beverage Sales Co. v. East Side Winery*, 568 F.2d 1147 (7th Cir. 1978).

It is clear, and appellee does not dispute the fact, that an appellate court "must apply the law in effect at the time it renders its decision", *Thorpe v. Housing Authority*, 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1968); *Vandenbark v. Owens Illinois Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1940); *Robinson v. Heilman*, 563 F.2d 1304 (9th Cir. 1977); *Lytle v. Commissioners of Elections of Union County*, 541 F.2d 421 (4th Cir. 1976), unless doing so would cause manifest injustice, *Bradley v. Richmond School Bd.*, 416 U.S. 696, 716, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1973). Eastern does argue, however, that *GTE Sylvania* is entirely consistent with the trial court's instructions, verdict, and judgment and consequently a remand is unnecessary. Eastern relies in particular on footnote 18 of the *GTE Sylvania* opinion, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568, in which the Court emphasizes that its conclusions relate only to nonprice restrictions and are not intended to affect the "per se illegality" of resale price restrictions. Thus Eastern maintains that while a pure territorial restriction case can no longer be evaluated under the per se rule of *Schwinn*, a policy of territorial restriction that includes resale price restrictions is still per se illegal. We disagree. The price restrictions at issue in this case are not the kind that require per se treatment.

The entire thrust of the *GTE Sylvania* opinion is that "departure[s] from the rule of reason standard must be based upon demonstrable economic effect rather than . . . formalistic line drawing", *id.* at 57, 97 S.Ct. at 2562, and that " 'The Anti-Trust Act aims at substance.' ", *id.*, at 47, 97 S.Ct. at 2556 (quoting from *Appalachian Coals, Inc. v. United States*, 288 U.S. at 344, 377, 53 S.Ct. 471, 77 L.Ed. 825 (1933)). It may be true that defendant's policies here appear in *form* to resemble resale price maintenance agreements. However, we are unable to conceive of how the resale price restrictions used to enforce the assigned territories in the present case can possibly have a greater anti-competitive *effect* than a pure policy of territorial restrictions.* Certainly, if the price at which Heerbrugg

---

* That the resale price restrictions allegedly imposed by Wild were limited to the enforcement of territorial restrictions is clear from the testimony of David Brodsky, Vice President of Eastern, during direct examination at trial.

instruments would be competitive outside of Rhode Island is less than list price, requiring Eastern to sell at list does no more nor less than prohibit Eastern from selling outside of Rhode Island altogether. In the unlikely event that Heerbrugg instruments are competitive at list prices or at higher than list prices, requiring Eastern to sell at list will have less of an anti-competitive effect than restricting its sale to Rhode Island regardless of price. Thus the resale price restriction in the present case produces the same anti-competitive effect as pure territorial restrictions but to a lesser degree. If the Supreme Court holds that pure territorial restrictions should be analyzed under the rule of reason, we can see no reason based on substantive economic effect why a similar but less anti-competitive scheme should be treated differently.

*We reverse the district court's judgment and remand for a new trial consistent with the standards explained in Continental TV, Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977) and this opinion.*