**BEN ELFMAN & SON, INC., a Massachusetts corporation, and Ben Elfman & Son, Inc., a Connecticut corporation, Plaintiffs,**

v.

**CRITERION MILLS, INC., and Benj. Berman, Inc., Defendants.**

### Civ. A. No. 87–2696–T.

United States District Court, D. Massachusetts.

Oct. 3, 1991.

James D. St. Clair, James C. Burling, John J. Falvey, Jr., Hale and Dorr, Boston, Mass., for plaintiffs.

Donald B. Gould, Goodwin, Procter & Hoar, Boston, Mass., for Criterion Mills.

Ira N. Glauber, Sanford S. Asher, Jaffee and Asher, New York City, for Benj. Berman, Inc.

Sanford F. Remz, Widett, Slater & Goldman, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Ben Elfman & Son, Inc. ("Elfman"), has distributed carpeting and other floor covering, since 1907, from offices in Chelsea, Massachusetts.[1] Elfman purchases carpeting from suppliers and sells it to retailers under its own labels.[2] Defendant Criterion

---

1. For convenience, the court will refer to Elfman and its co-plaintiff and affiliate, Ben Elfman & Son, Inc., of Connecticut, as "Elfman" or "plaintiff."

2. Since 1988, after the period relevant to this suit, Elfman has been a retailer as well.

Mills, Inc. ("Criterion"), a Georgia corporation, supplied carpeting to Elfman from 1973 to 1987, pursuant to an oral agreement.

In 1986, Elfman decided to expand into the New York–New Jersey market. It thereby began to compete with defendant Benj. Berman, Inc. ("Berman"), of New Jersey, Criterion's largest distributor. Elfman priced the same Criterion carpets for less than Berman. As a consequence, Berman allegedly gave Criterion the following ultimatum: make Elfman raise its prices to our (Berman's) level or drop Elfman as a distributor. Criterion terminated the Elfman distributorship in 1987. Elfman claims that this violated the Sherman Act, 15 U.S.C. § 1, and state laws.[3] Defendants contend that the termination was for cause, and counterclaim alleging unfair business practices by Elfman.[4]

Defendants have filed a motion for summary judgment, the essence of which is that plaintiff has not alleged a vertical price-fixing conspiracy, nor produced evidence sufficient to raise a factual issue with regard to the existence of such a conspiracy.

## A.

### Antitrust Conspiracy

1. Has Plaintiff Alleged a Vertical Restraint?

▮▮▮ Section 1 of the Sherman Act makes illegal a "contract, combination . . .

3. The pendent claims are M.G.L. c. 93A, common-law breach of contract, unjust enrichment, breach of covenant of good faith and fair dealing, and interference with contractual relations.

4. Defendants assert violations of M.G.L. c. 93A, breach of contract, and interference with contractual relations. Criterion also seeks to amend its first amended counterclaim to assert a Lanham Act claim against Elfman.

5. Concerted action in setting nonprice restrictions is unlawful only if it is unreasonable. *Monsanto,* 465 U.S. at 761, 104 S.Ct. at 1469. If this were such a "rule of reason" case, then Elfman would have to show that defendants unreasonably restrained trade in the relevant market. *See id.* Elfman has not done this, relying, rather, on an argument that defendants' conduct was *per se* unlawful price-fixing.

Defendants suggest that the issue in this case is territory- and not price-setting, and cite *East-*

or conspiracy . . . in restraint of trade." 15 U.S.C. § 1. Concerted action between a manufacturer and one or more distributors to set prices is *per se* illegal. *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 763, 767, 104 S.Ct. 1464, 1470, 1472, 79 L.Ed.2d 775 (1984).[5]

Elfman asserts that defendants entered into a vertical (manufacturer-distributor) price-fixing conspiracy, a *per se* violation of the Sherman Act. Defendants contend that plaintiff cannot, as a matter of law, establish such a violation, because vertical price-fixing can occur only when the manufacturer imposes prices on distributors. The controlling legal standard is set out in *Business Elec. Corp. v. Sharp Elec. Corp.,* 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988).

The facts of *Sharp Electronics* are very similar to those asserted here. Sharp, a manufacturer of calculators, allegedly conspired with one of its dealers to terminate a second dealer because of the latter's price-cutting. *Id.* at 721, 108 S.Ct. at 1518. The dealer initiated the alleged conspiracy by threatening to end its dealership if Sharp did not terminate the "price cutter." *Id.* This tracks Elfman's claim that Berman gave Criterion the alternatives of terminating Elfman (if Elfman did not conform to Berman's prices) or losing Berman, its largest distributor.[6]

*ern Scientific Co. v. Wild Heerbrugg Instruments, Inc.,* 572 F.2d 883 (1st Cir.1978), *cert. denied,* 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 128 (1978), in support. In *Eastern Scientific,* the court found that the defendant's price-restriction practice had the anti-competitive effect of a pure territorial restriction and was really, therefore, a nonprice restriction, subject to the rule of reason. *Id.,* 572 F.2d at 884, 886. The situation described in *Eastern Scientific* differs from the one at hand, however. Here, the alleged price-fixing would not have kept Elfman out of the New York–New Jersey market, but would only have made it conform its prices in that market to Berman's.

6. The evidence that most persuasively supports plaintiff's claim is a memorandum from Berman to Criterion, dated April 10, 1987, which reads, "[T]he problem [with Elfman's pricing] has escalated to a point beyond which we can

The Court in *Sharp Electronics* held that a vertical restraint was illegal *per se* only if it involved price-fixing; that is, only if there were an express or implied agreement to fix the dealer's prices, thereby limiting the dealer's freedom to set whatever price it chose. *Sharp Electronics*, 485 U.S. at 722–23, 108 S.Ct. at 1518–19, *citing Business Elec. Corp. v. Sharp Elec. Corp.*, 780 F.2d 1212, 1218 (5th Cir.1986). For Elfman to state a claim against defendants, therefore, it must allege that defendants agreed to set the prices at which Berman, the distributor, would sell Criterion's products.

Plaintiff does not allege this. It alleges, rather, that Berman set a level of prices which Criterion asked Elfman, another distributor, to meet. That scenario has very different antitrust implications from the one which the *per se* rule is meant to address. Without a manufacturer-dealer agreement as to the price level of the dealer, the termination of a "price cutter" does not of itself always tend to restrict competition and reduce output. *Sharp Electronics*, 485 U.S. at 726–27, 108 S.Ct. at 1520–21. Incentives against "cartelization" at both the manufacturing and distribution levels still exist,[7] and the resulting arrangement is like an exclusive-territory agreement, to which the *per se* rule does not apply. *Id.* at 727, 108 S.Ct. at 1521.

### 2. Summary Judgment Standard

■ To survive defendants' motion for summary judgment, plaintiff must present evidence tending to exclude the possibility that the manufacturer and the retained distributor acted independently. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *citing Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471. Elfman must show, therefore, "direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others [8] had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto*, 465 U.S. at 768, 104 S.Ct. at 1473. That unlawful objective is fixing prices or price levels. *See Sharp Electronics*, 485 U.S. at 735–36, 108 S.Ct. at 1525–26.

Plaintiff does not show that Criterion fixed Berman's prices by, for example, encouraging Berman to follow Criterion's suggested prices. *See Sharp Electronics*, 780 F.2d at 1219. Indeed, Criterion never published a suggested price list, and the evidence is that Berman and Elfman set their prices independently of Criterion. Affidavit of Louis J. McDermott III at ¶ 6; Affidavit of Barry Berman at ¶ 2; Deposition of Richard M. Elfman ("Elfman Deposition") at 2–36, 2–44. Assuming plaintiff's version of the facts to be true, the only evidence that suggests a conspiracy is that Criterion terminated Elfman because of Berman's threats, and that Berman and Criterion discussed Elfman. *See* Deposition of Barry Berman at 2–26–27, 2–109–110. This, however, does not establish that the defendants conspired to fix Berman's prices. At most, it infers that Criterion preferred Berman's prices—and Berman's business—to Elfman's.[9]

---

tolerate. You do what you must, we'll do what we must."

**7.** A manufacturer who has not agreed to a price level with a distributor can pass on lower prices to consumers and will, therefore, have an incentive to undersell other manufacturers. Also, that manufacturer will find it difficult to organize its dealers into a cartel, because they are not bound to sell at a set price level. *See id.*

**8.** In its discussion, the Court indicated that the proscribed agreement could be with only one dealer. *See Monsanto*, 465 U.S. at 767, 104 S.Ct. at 1472 (referring to the existence of an agreement between Monsanto and "one or more distributors").

**9.** Plaintiff suggests that the facts of *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990), are similar to the facts here. In *DeLong*, however, the plaintiffs presented significantly more evidence of a vertical agreement between defendant manufacturer and defendant distributor with regard to goods sold to a third party. Prices for the third party were inflated, the defendants met with "contacts" at the third party, and the defendants referred to this sales scheme as "playing the game." *Id.*, 887 F.2d at 1510–11. Comparable evidence of setting a price for Criterion's products is missing here.

Elfman has not shown any evidence of an accord between Berman and Criterion as to the prices at which Berman would sell the latter's products. The evidence does not tend to exclude the possibility that Berman set its prices independently of Criterion. Rather, it affirms that possibility.

## B.

### State Torts

#### 1. Breach of Contract

■ Elfman alleges that Criterion breached its distributorship agreement. That agreement, as characterized by Elfman, was, "We do a good job for you, you'll do a good job for us." Elfman Deposition at 2–24. Because the parties did not specify a duration, this contract was terminable at will. *Jackson v. Action for Boston Community Dev., Inc.*, 403 Mass. 8, 9, 525 N.E.2d 411, 412 (1988).

#### 2. Unjust Enrichment

■ Elfman claims that its past promotional efforts unjustly enriched Criterion. But Elfman does not show that its promotion of Criterion was separate from the dealership agreement. *See* Elfman Deposition at 2–24 (characterizing the agreement as, "if we show them support, if we push the new lines, they will continue to support us...."). The equitable remedy that plaintiff seeks is not available to a party with an adequate remedy at law. *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D.Mass.1982). If plaintiff were injured because Criterion wrongfully terminated its distributorship, the remedy of the antitrust laws, which give treble damages, would be adequate.

#### 3. Breach of Covenant of Good Faith and Fair Dealing

■ Elfman alleges that an implied covenant of good faith and fair dealing was breached when Criterion and Berman conspired to terminate Elfman. Massachusetts, however, has not adopted a general rule that such a covenant exists in at-will contracts, *see Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251, 1257 (1977), and has refused to find that termination of a franchise alone establishes bad faith. *See Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 297–300, 408 N.E.2d 1370, 1378–80 (1980). The type of conduct that would support a claim of bad faith is not present here: usurpation of funds, deprivation of income already earned, deception. *See id.*, 381 Mass. at 299–300, 408 N.E.2d at 1380.

#### 4. Chapter 93A

■ Elfman claims that Criterion violated M.G.L. c. 93A by conspiring with Berman to terminate Elfman. A c. 93A claim must fail, however, if the antitrust and contract claims fail. *J.H. Westerbeke Corp. v. Onan Corp.*, 580 F.Supp. 1173, 1192 (D.Mass.1984). *See also Zapatha*, 381 Mass. at 299–300, 408 N.E.2d at 1380 (termination of franchise not an unfair or deceptive act).

#### 5. Interference with Advantageous Relations

■ Finally, Elfman claims that Berman tortiously interfered with its business relations with Criterion. The plaintiff, however, must show "something more than intentional interference," specifically, improper motives or improper means. *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815, 816, 551 N.E.2d 20, 23 (1990). Plaintiff's failure to show an antitrust violation, or any other wrongful conduct, precludes finding the impropriety required for this tort.

## C.

### Conclusion

Because plaintiff has not raised a genuine factual issue as to any of the counts in its complaint, defendants' motion for summary judgment is ALLOWED.