Toomey, J.
Plaintiff, William Union (Union), brings this action against defendants R. Gordon and Co., Inc., Paul Gordon, and Samuel Gordon (hereinafter collectively, “the Gordons”), alleging that the Gordons failed to pay Union a broker’s commission (Count I) and breached the implied covenant of good faith and fair dealing (Count III). Union also seeks recovery for the fair value of his services (Count II).
The Gordons now move for summary judgment on Counts I, II and III on the grounds that no binding contract was entered into between the Gordons and the potential buyer produced by Union, that any agreement between the Gordons and Union provided for compensation solely byway of a commission on the sale of the business, and that there is no covenant of good faith and fair dealing in this at-will contract. Union opposes the motion arguing that the Gordons reached an oral agreement with the potential buyer and impermissibly used Union’s services to force Paul Gordon to sell out to Samuel Gordon, thus depriving Union of his commission. For the following reasons, the Gordons’ motion is allowed.
FACTS
In September, 1985, the Gordons contacted Union’s real estate brokerage firm for the purpose of effecting the sale of Paul Gordon’s interest in R. Gordon and Co., Inc. (the business), a wholesale food distributorship. On or about September 19, 1985, Paul Gordon signed an agreement giving Union’s firm a thirty-day exclusive right, commencing October 1, 1985, to sell the business. The exclusive agreement called for payment of an eight percent commission on the sale of the business.
In late October 1985, Union’s firm presented Alfonso Paglia (Paglia) as a potential buyer to the Gordons. Paglia made an offer to purchase the business. Negotiations continued over the next few months and a Purchase and Sale Agreement and Asset Purchase Agreement (the sale agreements) were executed in April, 1986. The sale agreements were contingent upon Paglia presenting a financing commitment letter not later than thirty days after April 28, 1986. The Gordons never received such letter and, in July 1986, *583 the Gordons’ attorney informed Paglia that the parties’ obligations under the sale agreements were terminated. The parties do not dispute that the Paglia deal fell through and that Union is entitled to no commission for that particular deal.
In August, 1986, Union brought another buyer to the Gordons. No agreement between the Gordons and the potential buyer was reached.
On September 9, 1986, the Gordons, Union, Eugene Kaplan (a broker at Union’s firm), Paglia, Jack Wolfson (Paul Gordon’s attorney), James McLauglin (Paglia’s attorney), Paul Cyr (Paglia’s accountant), and Paul D’Onfro (Sam Gordon’s attorney) met to discuss reviving the Paglia deal. No written agreement was produced as a result of the Paglia revival meeting.
Paglia has testified, and there is no dispute, that a conveyance of the business to Paglia never took place. Cyr, Wolfson, and Samuel Gordon testified at deposition that any potential sale hinged on Paglia obtaining financing and a letter of credit. Paglia did not provide a letter of credit or financing within the specified three-week period after the meeting.
Approximately three weeks after the Paglia revival meeting, Paul Gordon and Samuel Gordon entered into an agreement under which the business was sold to Samuel Gordon. Paul Gordon received no more money by selling the business to Samuel Gordon than he would have realized if he had sold the business to Paglia under the terms discussed at the September 9, 1986 meeting.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving parry is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
A. COUNT I — THE CONTRACT CLAIM
Union bases his Count I claim to a commission on the September 9, 1986 meeting. In order to show entitlement to a commission, Union must satisfy three criteria. See Tristram’s Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975). Union must show 1) that he produced a purchaser ready, willing and able to buy on terms fixed by the Gordons, 2) that the purchaser entered into a binding contract with the Gordons, and 3) that the purchaser completed the transaction by closing on the title in accordance with the provisions of the contract. Id. If the contract was not consummated because of lack of financial abiliiy of the buyer or because of any other default by the buyer, there is no right to a commission, id., and Union’s claim will fail.
Union’s claim for commission may survive, however, if the failure of the completion of the contract resulted from the Gordons’ wrongful act or interference. Id. But, in situations where the seller is responsible for the failure of completion of sales transactions, no commission is owing unless the seller has signed a written, binding contract with the broker’s client. Capezzuto v. John Hancock Mutual Life Ins. Co., 394 Mass. 399, 403 (1985). (Sale to broker’s client fell through because seller decided to convey to third party; no commission owed because no binding contract of sale between the seller and prospective buyer had been executed and the record permitted no inference that the seller had acted in bad faith.) A seller ordinarily expects that he is free to sell to whomever he chooses, until he has signed a purchase and sale agreement. Id.
Neither view of Union’s claim — viz, performance by Union or misconduct by the Gordons — possesses merit. It is undisputed that the Gordons and Paglia did not execute a written contract for the sale of the business and that Paglia failed to provide proof of financing and/or a letter of credit in compliance with the terms discussed at the September 9, 1986 meeting. Paglia did not complete the transaction by closing on the title in accordance with the provisions of his alleged contract with the Gordons. Thus, Union has failed to meet at least two of the three criteria necessary to show his contractual entitlement to a commission. See Tristram's Landing, Inc. v. Wait, supra&t 629.
Furthermore, Union has failed to set forth specific evidence of any bad faith on the part of the Gordons. In fact, the undisputed evidence shows that Paglia did not present the necessary financing requirements under the April sales agreement nor did he provide the required letters of credit subsequent to the September 9, 1986 meeting. Paul Gordon did notreceive anymore money as a result of the sale to Samuel Gordon than he would have received from a sale to Paglia under the terms presented at the September 9, 1986 meeting. Nothing here suggests a purpose on the part of Paul *584 Gordon to obtain a.profit from Union’s exertions. See Capezzuto v. John Hancock Mut. Life Ins. Co., supra at 404. Accordingly, there is no genuine issue of material fact which, if resolved favorably to Union, would entitle him to recovery and summary judgment will be allowed for the defendants on Count I of the complaint.
B. COUNT II — THE QUANTUM MERUIT CLAIM
In Count II of the complaint, Union claims he is entitled to the fair value of his services. Union asserts that an oral agreement was reached at the September 9, 1986 meeting by which he would receive a flat fee of $35,000 for the sale of the business to a buyer produced by Union. Union does not suggest that the agreement provided for any compensation other than the commission for the sale of the business. As no sale to a Union-produced buyer ever took place, Union is not entitled to a commission. Where there is an agreement which provides for compensation in the form of a commission founded upon a defined sale, a broker is not entitled to recover for the fair value of his services. Lattuca v. Cusolito, 343 Mass. 747, 752 (1962). The existence of the oral contract for a broker’s commission precludes Union from prevailing on a claim in equity for quantum meruit, see Lattuca v. Cusolito, supra at 752; Ben Elfman & Son, Inc. v. Criterion Mills, Inc., 774 F.Supp. 683, 687 (D. Mass. 1991), and the Gordons shall, therefore, have summary judgment.
C. COUNT III — THE IMPLIED COVENANT CLAIM
Union claims in Count III of his complaint that the Gordons breached the implied covenant of good faith and fair dealing attendant to the alleged agreement between the Gordons and Union. The Gordons reply that, where parties to a contract do not specify a duration of the contract, the contract is terminable at will and the covenant of good faith and fair dealing does not exist in at-will contracts. See Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 9 (1988); Ben Elfman & Son, Inc. v. Criterion Mills, Inc., supra at 687. The Supreme Judicial Court has been reluctant to decree that the covenant of good faith and fair dealing is implicit in every contract, notwithstanding that the Court has found that an implied covenant of good faith and fair dealing exists in at-will employment contracts. McCone v. New England Telephone & Telegraph Co., 393 Mass. 231, 233 (1984); Fortune v. National Cash Register Co., 373 Mass. 96, 104 (1977). Thus, say the Gordons, there was no implied covenant, in the at-will contract at bar, for them to breach.
The September 19, 1985 written contract between Union and the Gordons expired, according to its very terms, at the end of October, 1985. Any continuing oral agreement between Union and the Gordons, including the alleged agreement reached at the September 9, 1986 meeting, were not specific in duration and thus did constitute at-will relationships which could be terminated by either party at any time. See Fortune v. National Cash Register Co., supra at 100; Remco Distributers, Inc. v. Oreck Corp., 814 F.Supp. 171, 174 (D. Mass. 1992). No implied covenants of good faith and fair dealing can be found in such a contract.
Even if the Court considers the alleged agreement between Union and the Gordons to have been an at-will employment contract, Union has not asserted facts which could establish that there was any bad faith on the part of the Gordons when Paul Gordon sold the business to Samuel Gordon. See Fortune v. National Cash Register Co., supra at 104-05 (bad faith where principal sought to deprive agent of compensation by terminating contractual relationship when the agent was on the brink of successfully completing the sale and the principal reaped the benefits of the sale). The covenant of good faith and fair dealing prohibits a parly from doing anything which would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Id. at 104. An employer will be denied any readily definable financial windfall resulting from the denial of compensation to an employee for past services. McCone v. New England Telephone & Telegraph Co., supra at 234. To support a claim for breach of the implied covenant of good faith and fair dealing, Union must show that he lost reasonably ascertainable future compensation based on past services, that the Gordons received financial benefit from his discharge, or that Union was discharged without cause for a reason that, as a matter of public policy, should be rejected as adequate ground for discharge. Phillips v. Youth Development Program, Inc., 390 Mass. 652, 657 (1983). No such showing appears at bar.
This is not a case in which a plaintiff is seeking commissions already earned. See McCone v. New England Telephone & Telegraph Co., supra at 234; Fortune v. National Cash Register Co., supra at 104-05. The Gordons are not attempting to deprive Union of a contractual benefit to which he is otherwise entitled. See Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 884 (1982) (issue was whether employer deprived employee of money that he fairly earned and legitimately expected). Union did not provide the buyer to which Paul Gordon sold his business, and thus Gordon did not unfairly reap the benefit of any acts by Union. Accordingly, either because there is no covenant in this agreement or because no breach of the covenant has been shown, summary judgment will be allowed for the defendants on Count III of the complaint.
ORDER
Based on the foregoing, it is ORDERED that defendants’ motion for summary judgment on Counts I, II, and III of the complaint is ALLOWED.