NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-551

RIA K. MCNAMARA, INC.

vs.

ANN B. PRATT, trustee,[1] & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The question in this case is whether the plaintiff, real estate broker Ria K. McNamara, is entitled to a commission with respect to a contemplated (and contracted) sale of real estate that never took place.  Under the Supreme Judicial Court's opinion in Tristram's Landing, Inc. v. Wait, 367 Mass. 622, 629 (1975) (Tristram's Landing), the general rule is that a broker is not entitled to a commission absent a completed transaction. Tristram's Landing delineated an exception, however, where the failure to complete the contracted sale "result[ed] from the

_____

    [1] Of the Nobscott Realty Trust.

    [2] Northside, LLC and Robert E. Foley; RCS Learning Center, Inc., and RCS, Behavioral and Educational Consulting, LLC, as reach and apply defendants.

wrongful act or interference of the seller."  Id.  The plaintiff McNamara claimed that the Tristram's Landing exception applied in this case, but after a jury-waived trial, a judge of the Superior Court ruled in favor of the defendants, expressly finding (1) that the buyers were not ready and able to close at the time specified in the parties' purchase and sale agreement, and (2) that "no evidence had been presented that [the buyers'] inability to meet the closing date timeline was the result of [the sellers'] bad faith."  Judgment entered dismissing the complaint, and the plaintiff appealed.  We affirm.

Facts.  The sellers in this case were the defendants, Ann B. Pratt, trustee of the Nobscott Realty Trust, and Northside, LLC.  The buyers were the reach and apply defendants, RCS Learning Center, Inc., and RCS, Behavioral and Educational Consulting, LLC (collectively RCS).  In 2014, RCS retained the plaintiff to help them find a property for their school.  The plaintiff introduced RCS to Robert E. Foley, the principal of the sellers, whom the plaintiff knew through another listing of hers.  The sellers owned two properties in Framingham that they were interested in selling for development (the properties).  RCS decided to buy the properties to construct a school, and in May 2015, RCS and the sellers signed a purchase and sale agreement (P&S) for the properties whose key provisions were (1) a purchase price of $2.5 million, (2) a closing date forty-five

days after the date on which all necessary permits were acquired for construction of the school (and the appeal period had passed), (3) a financing contingency in the amount of $8 million, and (4) that the plaintiff "shall be paid a fee equal to five (5%) percent of the Purchase Price pursuant to a separate agreement at the end of the Closing." That same month, and again in August 2015, the P&S was amended in ways that are not material to our conclusion here.

On June 2, 2016, the Framingham planning board approved RCS's application for site plan review and a public way access permit. No one challenged that decision before the appeal period expired on June 22, 2016. Under the P&S, the closing was required to take place within forty-five days of that date, which was August 6, 2016. The closing did not take place, however, and as of August 6, RCS did not have financing in place for the project. Over the months after August 6, RCS proposed multiple amendments to the P&S as they tried to negotiate with the bank for a loan, but none of the proposals were agreed to by Foley, and in February 2017, the bank denied RCS's application for financing. RCS started working with a different bank, but in May 2017 they received notice from Foley that the P&S "expired and is not enforceable." Foley proposed new contract terms on behalf of the sellers that RCS found unacceptable; thereafter, RCS sued the sellers and Foley in the Land Court,

3

claiming that the sellers had breached the P&S and seeking (initially) specific performance thereof (Land Court action).

The plaintiff tried to intervene in the Land Court action, but her motion was denied. She thereafter filed the instant complaint in the Superior Court, claiming entitlement to a commission and alleging breach of contract, fraud, violation of G. L. c. 93A, and quantum meruit.[3] Meanwhile, the Land Court case went on to trial. In a comprehensive decision, the Land Court judge ruled against RCS as to its claims under the P&S. The judge concluded that (1) Foley had breached the P&S as modified by failing to provide a first mortgage to RCS with respect to certain advance payments that RCS had made to Foley, but that (2) RCS waived that breach and continued under the agreement; and that thereafter (3) "neither party tendered performance under the agreement as modified so as to put the other in breach, and that, instead, [(4)] the parties abandoned their agreement."

Plaintiff McNamara's claims in this case also went to a trial, in July 2022.[4] The Superior Court judge ruled against McNamara's claim for a commission. He concluded that although "Foley's conduct throughout the course of his dealings with RCS

---

[3] The complaint also sought a declaration concerning the rights and responsibilities of the parties.

[4] At trial the plaintiff waived her claim for fraud.

4

was unconscionable," nevertheless the failure of RCS to close was not caused by Foley's bad conduct. Rather, "no evidence had been presented that RCS's inability to meet the closing date timeline was the result of Foley's bad faith." The judge dismissed the plaintiff's remaining claims as well, for substantially the same reasons. This appeal followed.

Discussion. Tristram's Landing, 367 Mass. at 629, held:

"When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract. If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his . . . there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid." (Citation omitted; emphasis added.)

In short, Tristram's Landing generally requires that the sale be consummated in order for the broker to be entitled to a commission, but "[t]he requirement that the sale actually be consummated . . . is subject to an exception." Hillis v. Lake, 421 Mass. 537, 542 (1995). "In circumstances where 'the failure of completion of the contract results from the wrongful act or interference of the seller, the broker's claim is valid and must be paid.'" Capezzuto v. John Hancock Mut. Life Ins. Co., 394 Mass. 399, 402 (1985), quoting Tristram's Landing, supra at 629.

5

To recover under the exception, a broker must show "bad faith dealing, or some other misconduct which prevents an agreement between the broker's client and the seller, or which suggests 'a purpose on the part of the [seller] to obtain without payment a profit from the [broker's] exertions'" (citations omitted). Capezzuto, supra at 404.

Here, the plaintiff has pointed to two acts as evidence of Foley's "bad faith" -- (1) that Foley failed to disclose at the outset that substantial property taxes were owed on the properties, and (2) that Foley breached the modified P&S by not granting RCS a first mortgage on the properties to secure repayment of money that RCS advanced to Foley. The Land Court judge made findings on these issues and, in particular, found that Foley breached the modified P&S. The plaintiff attempts to fault the Superior Court judge for not considering himself bound by those findings, but the plaintiff's argument is unavailing, most importantly because the Land Court judge's findings simply were not material to the conclusion reached by the judge in this case. Indeed, the judge "[a]ccept[ed] as true" that Foley breached the P&S and "was less than transparent" about his finances, but nevertheless concluded that "Foley's questionable actions" were "not relevant" because "RCS never purchased the Propert[ies] and [the plaintiff] has failed to show that anything Foley did was the cause of [that] inability."

6

The judge's finding of lack of causation was not clearly erroneous, and indeed, was well supported by the record. The P&S required a closing by August 6, 2016, and nothing Foley did, or didn't do, affected the obligation to close. As the judge explained, the closing "never occurred, and the evidence makes clear that as of February 2017, RCS's financing had been rejected by [the bank]." New potential financing was identified, but it required a modification of the P&S, which "Foley was under no obligation to agree to." It follows that Foley's failure to agree to yet another modification was not wrongful and did not thwart the deal. Sparks v. Fidelity Nat'l Title Ins. Co., 294 F.3d 259, 268 (1st Cir. 2002). See Bonin v. Chestnut Hill Towers Realty Corp., 392 Mass. 58, 65 (1984) ("It is well settled that an owner may condition his liability to pay a broker's commission on his producing a purchaser who meets the terms he has specified"). Because the failure to close was not caused by any wrongful act of Foley, the judge correctly concluded that the Tristram's Landing exception does not apply and the plaintiff "is not owed a commission." See H1 Lincoln, Inc. v. South Washington St., LLC, 489 Mass. 1, 13 (2022) (to find clear error, reviewing court must be "left with the definite and firm conviction that a mistake has been committed" [citation omitted]).

7

We are not persuaded by the plaintiff's further complaint that this result is unfair to her.  It is well settled that brokerage contracts "entail a high risk of noncompensation. . . . It is not at all uncommon for a broker to perform services for which [s]he is not compensated."  Bump v. Robbins, 24 Mass. App. Ct. 296, 305 (1987).  See Sparks, 294 F.3d at 267.

Here the plaintiff agreed to be paid by separate agreement after the closing, with a "consequence that . . . [she] could only earn h[er] commission if the three Tristram's conditions were met."  Currier v. Kosinski, 24 Mass. App. Ct. 106, 108 (1987).[5]

Judgment affirmed.

By the Court (Meade, Englander & Hodgens, JJ.[6]),

Clerk

Entered: August 20, 2024.

---

[5] The parties' requests for an award of appellate attorney's fees are denied.

[6] The panelists are listed in order of seniority.